IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

THOMAS N.,

    *Plaintiff*,

v.

FRANK BISIGNANO, Commissioner
of Social Security,

    *Defendant*.

Case No. 24-CV-1114-EFM

**MEMORANDUM AND ORDER**

Plaintiff Thomas N.[1] seeks review of a final decision by Defendant, the Commissioner of Social Security ("Commissioner"), denying his application for a period of disability and disability insurance benefits under Title II of the Social Security Act. Plaintiff alleges that the Administrative Law Judge ("ALJ") erred by failing to incorporate certain moderate limitations into the residual functional capacity ("RFC") regarding Plaintiff's understanding and memory, concentration and persistence, and social interaction abilities. Having reviewed the record, and for the reasons stated below, the Court affirms in part, reverses in part, and remands the order of the Commissioner.

**I.**     **Factual and Procedural Background**

Plaintiff was born on May 18, 1971, and was 51 years old on the alleged disability onset date. On October 25, 2022, Plaintiff protectively filed a Title II application for a period of disability

---

[1] The court makes all its Memorandum and Orders available online. Therefore, in the interest of protecting the privacy interests of Social Security disability claimants, it has determined to caption such opinions using only the initial of the Plaintiff's last name.

and disability insurance benefits, alleging disability beginning June 30, 2022. The claim was initially denied on September 8, 2023, and upon reconsideration on September 20, 2023. Thereafter, Plaintiff filed a written request for hearing, received on October 2, 2023. Plaintiff appeared and testified before ALJ Michael Burrichter at a hearing held on March 5, 2024. Plaintiff was represented by counsel at the hearing and testified about his alleged disabilities. The ALJ also heard from a vocational expert.

The records that the ALJ reviewed contained a report by Jeffrey S. Copeland, APRN. Copeland opined that Plaintiff suffered from mild, moderate, and marked limitations in various areas of mental functioning. Specifically, he concluded that Plaintiff was moderately limited in his ability to carry out detailed instructions; understand and remember very short and simple instructions; maintain regular attendance; be punctual within customary tolerances; and get along with coworkers or peers without distracting them. He also concluded that Plaintiff's limitations caused him to be off task about 20% of the workday and miss about four days of work per month. The ALJ summarized the various limitations contained in Mr. Copeland's opinion, finding it "partially persuasive." He then specifically found that the "marked limits, off-task 20%, and absent 4 days" were not consistent with the other evidence of record. However, the ALJ did not explicitly include the moderate limitations in the RFC assessment.

On March 25, 2024, the ALJ issued a written decision. The ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged onset date. Within the decision, the ALJ concluded that Plaintiff has the following severe impairments: chronic obstructive pulmonary disease/emphysema and obstructive sleep apnea; degenerative disc disease of the lumbar spine; degenerative disc disease of the cervical spine; bilateral plantar fasciitis with "minimal" degenerative joint disease in the right foot/toes and "small" Achilles enthesophyte of the left foot;

obesity; depression; and generalized anxiety disorder. However, the ALJ determined that Plaintiff's impairment or combination of impairments did not meet or medically equal the severity of any of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1.

The ALJ determined that Plaintiff had the RFC to:

> perform a range of light work as defined in 20 CFR 404.1567(b), in that the claimant can lift and carry up to twenty pounds occasionally and lift or carry up to ten pounds frequently; stand and/or walk for six hours out of an eight-hour workday; and sit for six hours out of an eight-hour workday. The claimant should never climb ladders, ropes and scaffolds; and can occasionally climb ramps and stairs, stoop, kneel, crouch, crawl, and balance as defined by the SCO. The claimant can occasionally use foot controls bilaterally. The claimant should never work at unprotected heights or with moving mechanical parts; and can occasionally work in vibration. The claimant can occasionally tolerate exposure to fumes, odors, dusts, gases, poor ventilation and pulmonary irritants beyond a level found in an indoor work environment such as an office or retail store; and occasionally extreme cold and extreme heat. The claimant can understand, remember and carry out simple, detailed but not complex instructions and cannot perform work requiring a specific production rate, such as assembly line work or work that requires hourly quotas, with only occasional judgment and changes in a routine work setting. The claimant can occasionally respond to and have interaction with supervisors, coworkers and the general public.

After considering Plaintiff's age, education, work experience, and RFC, the ALJ found that a significant number of jobs existed in the national economy that Plaintiff could perform. Thus, the ALJ concluded that Plaintiff had not been under a disability from June 30, 2022, through the date of his decision, March 25, 2024.

Plaintiff requested reconsideration of the ALJ's decision, which was denied by the appeals council on May 7, 2024. Accordingly, the ALJ's March 2024 decision became the final decision of the Commissioner. Plaintiff then filed a complaint in this Court, seeking reversal of the Commissioner's decision. Because Plaintiff has exhausted all administrative remedies available, this Court has jurisdiction to review the decision.

## II. Legal Standard

Judicial review of the Commissioner's decision is guided by the Social Security Act, which provides that the Commissioner's findings as to any fact, if supported by substantial evidence, shall be conclusive.[2] The Court must therefore determine whether the Commissioner's factual findings are supported by substantial evidence and whether the ALJ applied the correct legal standard.[3] "Substantial evidence is more than a scintilla, but less than a preponderance; in short, it is such evidence as a reasonable mind might accept to support the conclusion."[4] The Court may "neither reweigh the evidence nor substitute [its] judgment for that of the [Commissioner]."[5]

An individual is disabled under the Social Security Act only if he can "establish that [he] has a physical or mental impairment which prevents [him] from engaging in substantial gainful activity and is expected to result in death or to last for a continuous period of at least twelve months."[6] This impairment "must be severe enough that [he] is unable to perform [his] past relevant work, and further cannot engage in other substantial gainful work existing in the national economy, considering [his] age, education, and work experience."[7] The Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled.[8] The steps are designed to be followed in order. If it is determined, at

---

[2] 42 U.S.C. § 405(g).

[3] *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

[4] *Barkley v. Astrue*, 2010 WL 3001753, at *1 (D. Kan. July 28, 2010) (citing *Castellano v. Sec'y of Health & Hum. Servs.*, 26 F.3d 1027, 1028 (10th Cir. 1994)).

[5] *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting *Casias v. Sec'y of Health & Hum. Servs.*, 933 F.2d 799, 800 (10th Cir. 1991)).

[6] *Brennan v. Astrue*, 501 F. Supp. 2d 1303, 1306–07 (D. Kan. 2007) (citing 42 U.S.C. § 423(d)).

[7] *Barkley*, 2010 WL 3001753, at *2 (citing *Barnhart v. Walton*, 535 U.S. 212, 217–22 (2002); 20 C.F.R. § 416.920 (2005)).

[8] *Wilson v. Astrue*, 602 F.3d 1136, 1139 (10th Cir. 2010); *see also* 20 C.F.R. § 404.1520(a)(4) (2012).

any step of the evaluation process, that the claimant is or is not disabled, further evaluation under a subsequent step is unnecessary.[9]

The first three steps of the sequential evaluation require the ALJ to assess: (1) whether the claimant has engaged in substantial gainful activity since the onset of the alleged disability; (2) whether the claimant has a severe, or combination of severe, impairments; and (3) whether the severity of those impairments meets or equals a designated list of impairments.[10] If the impairment does not meet or equal one of these designated impairments, the ALJ must then determine the claimant's RFC, which is the claimant's ability "to do physical and mental work activities on a sustained basis despite limitations from [his] impairments."[11]

After assessing the claimant's RFC, the ALJ continues to steps four and five, which require the ALJ to determine whether the claimant can perform his past relevant work, and if not, then whether he can generally perform other work that exists in the national economy.[12] The claimant bears the burden in steps one through four to prove a disability that prevents the performance of his past relevant work.[13] The burden then shifts to the Commissioner at step five to show that, despite his alleged impairments, the claimant can perform other work in the national economy.[14]

### III.     Analysis

Social Security Ruling (SSR) 96-8p, entitled "Assessing Residual Functional Capacity in Initial Claims," is a policy interpretation ruling issued by the Social Security Administration that

---

[9] *Barkley*, 2010 WL 3001753, at *2.

[10] *Lax*, 489 F.3d at 1084; *see also Barkley*, 2010 WL 3001753, at *2 (citing *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988)).

[11] *Barkley*, 2010 WL 3001753, at *2; *see also* 20 C.F.R. §§ 404.1520(e), 404.1545 (2012).

[12] *Barkley*, 2010 WL 3001753, at *2 (citing *Williams*, 844 F.2d at 751).

[13] *Lax*, 489 F.3d at 1084.

[14] *Id.*

explains how RFCs should be assessed in disability claims at steps four and five of the sequential evaluation process. Plaintiff claims that the ALJ violated SSR 96-8p by failing to explain why certain limitations assessed by Copeland were excluded from the RFC determination. Although the ALJ found parts of Copeland's opinion persuasive, Plaintiff contends that the ALJ's failure to explain why he discounted certain limitations is reversible error. In contrast, the Commissioner argues that the decision should be affirmed because the ALJ accounted for Plaintiff's moderate limitations by restricting him to simple, unskilled work with specific limitations on complexity, pace, judgment, and social interaction.

SSR 96-8p states, "[t]he RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." ALJs may not accept some moderate limitations in an RFC form but reject the other limitations without discussion.[15] However, if the record contains conflicting evidence, the ALJ is entitled to resolve those conflicts.[16]

Copeland assessed Plaintiff's understanding and memory, sustained concentration and persistence, social interactions, and adaptation. Each category contained several activities, which Copeland rated as mildly limited, moderately limited, markedly limited, or extremely limited. Notably, the assessment did not contain a "no limitation" option. Copeland defined the levels of impairment as follows:

> Moderately Limited – Impairment levels are compatible with some, but not all, useful functioning. Considered to be 1 standard deviation below the norm, as 30% overall reduction in performance.
>
> Markedly Limited – More than Moderate, but less than extreme resulting in limitations that seriously interferes with the ability to function Independently.

---

[15] *Frantz v. Astrue*, 509 F.3d 1299, 1302–03 (10th Cir. 2007).

[16] *Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007).

Considered to be 2 standard deviations below the norm or 60% overall reduction in performance.

Extremely Limited – Impairment level precludes useful functioning in the category. Considered to be 3 standard deviations below the nom, or 90% overall reduction is performance.[17]

In his assessment of Plaintiff, Copeland did not mark any activities as "extremely limited." However, he marked several activities as either mildly, moderately, or markedly limited. In reviewing Copeland's assessment, the ALJ agreed with the mild and moderate limitations, noting that Plaintiff "has medically determinable mental impairments that limit [his] ability to perform mental work related tasks." But the ALJ rejected Copeland's assessed marked limitations for conflicting with other medical opinions, treatment notes, and Plaintiff's own testimony. Plaintiff does not challenge the ALJ's acceptance of the mild limitations or his rejection of the marked limitations. However, Plaintiff does challenge several of the moderate limitations, claiming that the ALJ discounted them without explanation.

Specifically, Plaintiff contends that the RFC is inconsistent with Copeland's opinion that Plaintiff has moderate limitations in the ability to: (1) carry out detailed instructions; (2) understand and remember very short and simple instructions; (3) maintain regular attendance; (4) be punctual within customary tolerances; and (5) get along with coworkers or peers without distracting them. Plaintiff further argues that omitting these limitations from the RFC materially affects the jobs identified by the ALJ, as they require levels of reasoning that are incompatible with the unaddressed impairments. The Court will address each in turn.

**A.     Carrying Out Detailed Instructions**

---

[17] Mr. Copeland did not define "mildly limited."

For the first disputed limitation—carrying out detailed instructions—the parties disagree over whether Copeland rated that limitation as moderate or marked. the Commissioner claims that the box checked is "markedly limited," and all marked limitations were adequately and indisputably reasoned away by the ALJ. However, Plaintiff claims that the box checked is "moderately limited," which was not reasoned away or discussed and ultimately conflicts with job requirements of the representative occupations the ALJ identified.

To the Court, it appears that Copeland originally checked the "markedly limited" box but subsequently crossed it out and checked the "moderately limited" box instead. Under the governing regulations, a "moderate" limitation means that a claimant's "functioning in this area independently, appropriately, effectively, and on a sustained basis is fair."[18] This is significant because the representative occupations identified by the ALJ require level-two reasoning, defined by the Dictionary of Occupational Titles as requiring the ability to "[a]pply commonsense understanding to *carry out detailed* but uninvolved written or oral instructions."[19] Here, however, Plaintiff has a moderate limitation—i.e., a 30% reduction—on his ability to carry out detailed instructions. But the language of the regulation implies that in order to occupy a job which requires level-two reasoning, the claimant must not be limited in his ability to carry out detailed instructions. And "a moderate impairment is not the same as no impairment at all."[20] Accordingly, this moderate limitation appears incompatible with the mental demands of the representative occupations, raising doubt as to whether the ALJ's RFC determination is supported by substantial evidence.

---

[18] 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(F)(2)(c).

[19] Dictionary of Occupational Titles, App'x C, III (emphasis added).

[20] *Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007).

The Commissioner relies on the ALJ's evaluation of Plaintiff's testimony to argue that this moderate limitation is still consistent with level-two reasoning. Specifically, the Commissioner cites Plaintiff's statements that he can drive but misses turns; goes to the store to get gas about once a week; raises chickens for sale; prepares simple meals; reads the Bible; uses the Internet for research, email, Facebook, and YouTube; and keeps up with friends. However, none of these activities necessarily involve carrying out detailed instructions. As such, they do not undermine the moderate limitation, and so the ALJ either should have included this limitation in the RFC or provided an adequate explanation for its exclusion.

**B.  Understanding and Remembering Short, Simple Instructions**

Copeland also assessed a moderate limitation on Plaintiff's ability to understand and remember very short and simple instructions. Unlike level-two reasoning, which requires carrying out detailed but uninvolved instructions, level-one reasoning requires only the ability to "carry out simple one- or two-step instructions." [21] The Tenth Circuit has held that "a limitation to simple instructions is inconsistent with both level-two and level-three reasoning."[22] Accordingly, given that Plaintiff has a moderate limitation—i.e., a 30% reduction—in this basic domain, the ALJ must either elicit a reasonable explanation reconciling this limitation with level-two reasoning jobs or proceed to step five with an appropriately adjusted assessment.

**C.  Attendance and Punctuality**

Next, Copeland opined that Plaintiff was moderately limited in his ability to maintain regular attendance and be punctual within customary tolerances. "[T]he ability to maintain regular attendance and to be punctual within customary tolerances is 'critical' for the performance of

---

[21] Dictionary of Occupational Titles, App'x C, III.
[22] *Paulek v. Colvin*, 662 F. App'x 588, 594 (10th Cir. 2016).

unskilled work, and . . . 'tolerances are usually strict.'"[23] Despite the importance of these requirements, there is little evidence that the ALJ considered these abilities in his narrative discussion. The only time the ALJ addresses attendance and punctuality is in his rejection of Copeland's finding that Plaintiff would be off task 20% of the time and absent four days per month. However, the Court cannot follow the ALJ's reasoning for rejecting this opinion. The ALJ claims that Copeland's finding was inconsistent with other medical opinions, treatment notes, and Plaintiff's testimony of his daily tasks. But none of those sources addressed Plaintiff's abilities regarding attendance or punctuality. Instead, they addressed Plaintiff's mental status, noting that he had no signs of anxiety or depression, was alert and oriented, had appropriate mood and responses, and was in no acute distress. Thus, the ALJ's rationale fails to directly rebut the attendance and punctuality limitations, and without specific evidence to the contrary, the decision to exclude it from the RFC is not supported by substantial evidence.

Additionally, restrictions incorporated in Plaintiff's RFC—to simple tasks and decisions, work not involving production quotas or an assembly line pace, and limited interaction with others—have no clear bearing on his ability to attend work regularly and on time. Therefore, in light of the "strict," "critical," and highly specific nature of these requirements, the Court finds that the ALJ's failure to either incorporate or discuss these limitations constitutes reversible error.

D.     **Social Interactions with Coworkers and Peers**

Lastly, Plaintiff argues that the ALJ failed to incorporate or discuss his moderately limited ability to get along with coworkers or peers without distracting them. The Court disagrees. In his narrative discussion, the ALJ accounted for Plaintiff's moderate limitation, finding that he can

---

[23] *Gutierrez v. Kijakazi*, 2021 WL 4710508, at *6 (D.N.M. Oct. 8, 2021) (quoting Program Operations Manual System, Disability Insurance 25020.010(B)(3)(e)).

"occasionally respond to and have interaction with supervisors, coworkers and the general public." The ALJ discussed several reasons why he came to this conclusion, including Plaintiff's testimony that he is married and lives with his spouse, visits the store once a week, and uses the internet and Facebook to keep up with friends. Moreover, during a consultative examination, the examiner did not note problems with speech, communication, or behavior. Medical sources also indicated that Plaintiff cooperates during office visits, expressing usual and acceptable social behavior. Additionally, during the hearing, Plaintiff demonstrated adequate social and communication skills. Accordingly, the ALJ provided a sufficient explanation, supported by substantial evidence, for his finding that Plaintiff's moderate social limitation does not preclude occasional interaction with coworkers or peers.

In sum, the ALJ failed to adequately address several moderate limitations assessed by Mr. Copeland—specifically, Plaintiff's ability to carry out detailed instructions, understand and remember simple instructions, and maintain regular attendance and punctuality. Because these limitations bear directly on the mental demands of the representative occupations and are not meaningfully reconciled in the RFC, the ALJ's decision as to these areas of mental functioning is not supported by substantial evidence and must be remanded to either include the limitations or explain why they should be excluded. However, the ALJ's assessment of Plaintiff's social functioning—specifically, his ability to interact with coworkers and peers—was supported by substantial evidence and is therefore affirmed.

**IT IS THEREFORE ORDERED** that the decision of the ALJ is **AFFIRMED in part** and **REVERSED in part**, and the case is **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this memorandum and order.

**IT IS SO ORDERED.**

-12-

Dated this 28th day of July, 2025.

ERIC F. MELGREN
CHIEF UNITED STATES DISTRICT JUDGE